UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MYRTLE COOPER, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:13-cv-1023 |
| | ) Judge Trauger |
| v. | ) |
| | ) |
| PERFECT EQUIPMENT, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the court is a Motion for Summary Judgment (Docket No. 16) filed by the defendant, Perfect Equipment, Inc. ("Perfect Equipment" or the "company"), to which the plaintiff has filed a Response in opposition (Docket No. 23), and the defendant has filed a Reply (Docket No. 30). Also pending is a Motion for Partial Summary Judgment (Docket No. 27) filed by the plaintiff, Myrtle Cooper, to which the defendant has filed a Response in opposition (Docket No. 33). For the reasons discussed herein, both motions will be denied.

## BACKGROUND

I. **Overview**[1]

The defendant, Perfect Equipment, employed the plaintiff from July 2001 until her termination on August 27, 2012. Perfect Equipment is a Delaware corporation that is now known as Wegmann Automotive. (Docket 19 ¶ 2.) In this lawsuit, Cooper alleges that Perfect Equipment violated the Family and Medical Leave Act, 29 U.S.C. § 2600 *et seq*. ("FMLA" or

---

[1] Unless otherwise noted, the facts are drawn from the parties' submissions in support of their motions, including the defendant's Statement of Undisputed Facts (Docket No. 18 ("DSUF")) and the plaintiff's responses thereto (Docket No. 22), the plaintiff's Statement of Undisputed Facts (Docket No. 27, Ex. 2 ("PSUF")) and the defendant's responses thereto (Docket No. 32), and additional exhibits submitted in support of the respective motions (Docket Nos. 19 (Affidavit of Julie Darnell), 20 (Affidavit of Holly Hill), and 25, Exs. 1-4 (various depositions submitted by plaintiff).)

1

"Act"), by interfering with, restraining, or denying the plaintiff's right to take leave under 29 U.S.C. § 2615.

## II. Factual Background

### A. Cooper's Employment and July 2012 Request for Leave

Between July 2001 and her termination in 2012, Cooper was employed as a "loader, unloader, and powder coater" at Perfect Equipment. During her long employment with the company prior to the events giving rise to this litigation, Cooper requested leaves of absence under the FMLA on more than ten occasions, and the company approved each of her requests. It is undisputed that, upon the expiration of each of her FMLA requests prior to July 2012, Cooper reported promptly for work and the company returned her to her former position at the same salary.

On July 6, 2012, Cooper informed Holly Hill, who worked in Perfect Equipment's Human Resources Department ("HR"), that she required FMLA leave beginning on or about July 20, 2012, because she was scheduled to have back surgery. Hill referred Cooper to Julie Darnell, the HR Manager for the company who is responsible for administering the company's FMLA policy. At some point in time between July 6, 2012, and Cooper's leave, Cooper informed Darnell that she "felt like" her recovery would require FMLA leave for "up to three or four months." It is undisputed that both Perfect Equipment and Cooper considered Cooper's request for leave to be related to a serious injury and, therefore, eligible for FMLA leave.

When Cooper notified Perfect Equipment of her need for FMLA leave, the company gave Cooper a formal notice that listed her rights and responsibilities under the FMLA (the "Notice"). In the Notice, the defendant advised the plaintiff that she was required to provide sufficient medical certification to support her request for leave.

**B. The Medical Certification**

On July 17, 2012, Perfect Equipment received a copy of a medical certification form that was completed by Cooper's physician, Dr. George H. Lien. (Docket No. 19, Ex. 4.) In a part of the form titled, "Part B. Amount of Leave Needed," Dr. Lien wrote that he estimated that Cooper would be incapacitated for work during the period "7/23/12-8/21/12." In response to Question 6 on the form, Dr. Lien also noted that Cooper would need to attend follow-up treatment appointments or work part-time or on reduced schedule because of her condition. He further certified that one to two post-op treatments would be "medically necessary." In response to the form's question asking "[w]ill the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions . . .," Dr. Lien wrote "unknown." And finally, in a section on the form titled "Additional Information," Dr. Lien further wrote, "work status will be addressed at post op appointment on 8/21/12."

**C. Designation Notice**

Darnell used the information in the medical certification form submitted by Dr. Lien when she prepared a Designation Notice for the plaintiff's July 2012 leave of absence ("Designation Notice"). (Docket No. 19, Ex. 6.) Accordingly, the Designation Notice, dated July 17, 2012, states,

> Based on the information you have provided to date, we are providing the following information about the time that will be counted against your leave entitlement: Provided there is no deviation from your anticipated leave schedule, the following number of hours, days, or weeks will be counted against your leave entitlement: 2/13/12—2/17/12, 3/16/12, 6/15/12, 7/23/12—8/21/12.

The Designation Notice further states: "[t]he FMLA requires that you notify us as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown." (*Id.*)

**D. Cooper's Leave**

3

Before Cooper left for her July 2012 FMLA leave, she and Darnell discussed what the plaintiff would have to do in order to maintain her health insurance benefits if she was absent for an extended period of time. Darnell also gave the plaintiff a memorandum that explained that the plaintiff would be eligible for COBRA to maintain her health insurance benefits if she continued to be absent beyond 12 weeks of FMLA leave. Darnell submits in an affidavit that, when she gave the plaintiff a memorandum related to her insurance, Darnell also reminded the plaintiff that, under company policy, employees who exceeded four months of leave within a 12-month period were subject to termination, regardless of the reason for leave. (Docket No. 19.)

It is undisputed that the plaintiff received and reviewed the Designation Notice.[2] It is further undisputed that, when she received the Designation Notice, she did not call Ms. Darnell or the company to ask for clarification. The plaintiff testified at her deposition that, when she reviewed the Designation Notice, she "underst[ood] that her FMLA was approved." (Docket No. 21, Ex. 1 at 40.) Cooper further appeared to testify that, although she read and understood the dates listed for FMLA leave on the form—July 23, 2012 to August 21, 2012—she believed that her conversation with Darnell had indicated she would "get three to four months off." (*Id.* at 42.)

---

[2] The court notes that the plaintiff has "disputed" some facts submitted by the defendant that are, in reality, undisputed. For example, the defendant submits as an undisputed fact: "Plaintiff admits that she received and reviewed the Designation Notice, and she did not call Ms. Darnell or anyone else at the Company to ask questions about the Designation Notice. (Plaintiff at 40)." The plaintiff responded, "Disputed. In her deposition Plaintiff said she did not understand it that way. Cooper depo. At 42/7-18. The form does not say that is her only approved leave. In fact, the form says that 'All leave taken for this reason will be designated FMLA leave.'" Here, the plaintiff is not disputing the fact that was submitted by the defendant. She does not state that she did not receive or review the Designation Notice or that she *did* call Darnell or the company to ask questions about the notice. Moreover, the plaintiff's deposition testimony, cited by the defendant, expressly corroborates the accuracy of the fact. (Docket No. 21, Ex. 1 at 40.) In the interest of a timely disposition of the pending motion, the court will nevertheless consider the plaintiff's responses to the DSUF.

4

Cooper's leave of absence began on July 23, 2012. Approximately one week after her leave began, Cooper spoke with Hill and informed her that she was doing fine and using a walker. During that conversation, the plaintiff did not give Hill any additional information regarding her health and she did not contact the company again before her termination.

**E. Cooper's Termination**

Cooper did not report for work on August 22, 2012, the day after her FMLA leave, as stated on the Designation Notice, expired. Subsequently, Cooper missed four additional days of work. She did not contact the company during this time. On August 27, 2021, Perfect Equipment discharged Cooper.

Darnell states in an affidavit that the reason for Cooper's termination was her failure to return to work following the expiration of her approved leave of absence and her failure to communicate with the company to explain her absences. (Docket No. 19.) It is undisputed that the company's 2012 Associate Handbook ("Handbook") expressly provides that the company considers an employee's unexcused absence for three consecutive days without notification to the company to be a voluntary resignation. The Handbook further provides that a failure to return from a leave of absence on the date scheduled is grounds for disciplinary action, up to and including immediate termination. It is further undisputed that Cooper received a copy of the Handbook and understood that failing to timely return to work after a leave of absence was grounds for termination.[3]

---

[3] The court notes that the plaintiff, in her response to the DSUF, appears to object to Paragraph 54 of the DSUF, which states that Cooper "understood that failing to return to work after a leave of absence was grounds for termination. (Plaintiff at 19-20)." The plaintiff writes, "pursuant to F.R.C.P. 56(c)(2), Plaintiff objects that this asserted fact cannot be presented in a form that would be admissible in evidence." Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Here, the defendant cites to the plaintiff's deposition

### F. Procedural Background

Cooper filed this action against Perfect Equipment on September 20, 2013, alleging one count of interference with her FMLA rights. (Docket No. 1.) Cooper's claim appears to be grounded in her allegation that, in her conversation with Darnell, she "requested" three to four months leave under the FMLA and that, in her opinion, the Designation Notice granted such leave. Perfect Equipment answered the Complaint on October 18, 2013. (Docket No. 8.) Perfect Equipment filed its Motion for Summary Judgment as to the plaintiff's claim on October 6, 2014. (Docket No. 16.) The plaintiff filed her Motion for Partial Summary Judgment on the Issue of Liability on October 30, 2014. (Docket No. 27.)

## **ANALYSIS**

### I. **Rule 56 Standard**

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To win summary judgment as to the claim of an adverse party, a moving defendant must show that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim. Once the moving defendant makes its initial showing, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

---

testimony, which states: "Q: 'All right. If you would look at the third page of Exhibit 8, at Item Number 42, could you read that for me out loud?' A: 'Failure to return from a Leave of Absence on the date scheduled unless excused by the company.' Q: 'Do you understand what that means?' A: 'Yes, sir.' . . . 'If you don't come back on the day of your leave of absence, you'll be fired.'" (Docket No. 21, Ex. 1 at 19-20.) Because the plaintiff's testimony unequivocally supports the fact as offered by the defendant and that testimony would be admissible at trial, the plaintiff's objection is overruled.

(1986). Conversely, to win summary judgment as to its own claims, a moving plaintiff (such as Cooper) must demonstrate that no genuine issue of material fact exists as to all essential elements of her claims. "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II. The *McDonnell Douglas* Analysis

As an initial matter, Cooper's FMLA claim is analyzed employing the familiar burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined by *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). The *McDonnell Douglas* framework is properly used where a plaintiff uses indirect or circumstantial evidence to demonstrate that an employer acted with a retaliatory or discriminatory motive. If the plaintiff makes a *prima facie* showing, "the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Clay v. United Parcel Serv.*, 501 F.3d 695, 704 (6th Cir. 2007). To meet this burden, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for its decision. *Id.*; *see also Berry v. City of Pontiac*, 269 F. App'x 545, 549 (6th

7

Cir. 2008). If the defendant is successful, the burden then "shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." *Bryson v. Regis Corp.,* 498 F.3d 561, 570 (6th Cir.2007). To make this showing, Cooper retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that [the defendant] intentionally discriminated against her." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001).

The elements of a *prima facie* case for Cooper's interference claim are discussed below.

### III. The FMLA

The FMLA provides that an eligible employee is entitled to up to twelve weeks of medical leave in a year in the event of "'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (quoting 29 U.S.C. § 2612(a)(1)(D)); *see also Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The Sixth Circuit recognizes two theories for recovery under the FMLA: "the interference theory, pursuant to 29 U.S.C. § 2615(a)(1), and the retaliation theory, pursuant to 29 U.S.C. § 2615(a)(2)." *Id.* Here, Cooper has advanced a claim under only the first theory.[4]

**A. Interference Claims under the FMLA**

The FMLA makes it illegal for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. §

---

[4] The court notes that Cooper's FMLA interference claim, as pleaded and argued in her briefs related to the pending motions, appears to overlap with the FMLA retaliation theory. Indeed, for that reason, the defendant addresses both the retaliation and interference theories in its initial brief in support of its summary judgment motion. However, in her Response to the defendant's Motion, the plaintiff does not argue that her termination constituted retaliation in violation of the FMLA and, accordingly, she has abandoned any retaliation claim that she may have alleged in her Complaint. Consequently, the court will analyze her claim as solely an interference claim under the FMLA, as the plaintiff has described the claim in her briefs.

2615(a)(1). Consequently, if an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003).

A plaintiff must establish a *prima facie* case of FMLA interference by demonstrating five elements: "(1) [she] was an '[e]ligible employee'; (2) the defendant was an '[e]mployer' covered under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of [her] intention to take leave; and (5) the employer denied the employee FMLA benefits to which [she] was entitled." *Wysong*, 503 F.3d at 447 (quoting *Cavin*, 346 F.3d at 719); *see also Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005). The employee must establish these elements by a preponderance of the evidence. *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 335 (6th Cir. 2005) (citing *Cavin*, 346 F.3d at 719). Regulations interpreting the FMLA explain that interference includes, "for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b) (2013); *see also Arban*, 345 F.3d at 402.

"Because the relevant issue is whether the employer provided the employee with the entitlements provided by the FMLA, an employer may violate Section 2615(a)(1) regardless of the intent behind its conduct." *Ritenour v. Tenn. Dep't of Human Servs.*, 497 F. App'x 521, 530 (6th Cir. 2012). However, because the Sixth Circuit has recognized that "the FMLA is not a strict-liability statute, the mere occurrence of interference with an employee's FMLA rights is not a *per se* FMLA violation." *Id.* (internal citations omitted). If an employer demonstrates a legitimate reason unrelated to the exercise of FMLA rights for taking adverse action against the employee, the plaintiff must rebut the employer's reason by showing that the proffered reason had (1) no basis in fact, (2) did not motivate the adverse employment action, or (3) was

insufficient to warrant the adverse employment action. *Id.* (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 772 (6th Cir. 2012)); *see also Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008).

**IV.    The Defendant's Motion for Summary Judgment**

To win on summary judgment, Perfect Equipment must show that there is no genuine issue of material fact as to at least one element of Cooper's *prima facie* claim for interference. The five elements include that (1) Cooper was an "eligible employee" under the FMLA; (2) Perfect Equipment was an employer covered by the FMLA; (3) Cooper was entitled to leave under the FMLA; (4) Cooper gave Perfect Equipment notice of her intention to leave; and (5) Perfect Equipment denied Cooper the FMLA benefits to which she was entitled. If the defendant succeeds on this initial showing, the burden shifts to the plaintiff, who must provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial."

Here, Perfect Equipment disputes only the fourth and fifth elements of Cooper's *prima facie* case. Specifically, Perfect Equipment contends that it is undisputed that (1) the plaintiff failed to inform the company that she needed an extension of her FMLA leave beyond August 21, 2012 and therefore, did not give notice of her intention to take leave; and (2) Cooper cannot show that Perfect Equipment denied Cooper her FMLA entitlements because her leave expired on August 21, 2012, and she did not request an extension of her leave or otherwise notify the company of her incapacity to work.

**A. Did Cooper Give Sufficient Notice of Her Intent to Take Leave?**

1. *Generally*

Title 29 of the Code of Federal Regulations provides the obligations of employees seeking foreseeable FMLA leave. 29 C.F.R. § 825.302. The regulations provide that "[a]n

employee must provide [her] employer with at least 30 days advance notice before FMLA leave is to begin if the need for leave is foreseeable." *Id.* at § 825.302(a). As the Sixth Circuit has explained, the employee's burden is not onerous as to the notice element of her claim. *See Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014) (discussing notice and explaining that "[t]he employee's burden is not heavy."). "An employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA has occurred." *Cavin*, 364 F.3d at 723-24. Additionally, part of reasonable notice generally includes an indication of "the anticipated timing and duration of the leave." *Id.* at § 825.302(c).

The regulations state that notice involves something more than "[c]alling in 'sick.'" *Id.* at § 825.303(b). However, "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." *Id.* The regulations further state that "notice need only be given one time, but the employee shall advise the employer as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown." *Id.* at 302(c).

Once the employee has informed the employer of her intent to take leave, the regulations expressly provide that an employer is obligated to inquire with respect to additional details as to the requested leave. The regulations provide that, "*[i]n all cases*, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken. In the case of medical conditions, the employer may find it necessary to inquire further to determine if

11

the leave is because of a serious health condition and may request medical certification to support the need for such leave." *Id.* (emphasis added); *see also* 29 C.F.R. § 825.305 (discussing medical certification, generally).

The Act itself and its related regulations do not expressly discuss whether, for purposes of satisfying the notice element of a plaintiff's *prima facie* case, the plaintiff's initial estimation as to the amount of her requested leave is relevant or even dispositive. However, recently, the Sixth Circuit articulated that, for this notice element of an FMLA interference claim, "[t]he relevant question is whether [an employee] provided [her employer] with notice that she needed FMLA leave, not whether she provided notice that she needed a certain amount of FMLA leave." *Wallace*, 764 F.3d at 586.

In *Wallace*, the Sixth Circuit reviewed a magistrate judge's decision to deny judgment as a matter of law at trial to a defendant seeking dismissal of an FMLA interference claim. The factual and procedural circumstances of *Wallace* are substantially dissimilar from the record here; however, the Sixth Circuit plainly rejected an argument with respect to establishing "notice" that is nearly identical to Perfect Equipment's argument here. Where the defendant-employer argued that the notice element of the plaintiff's FMLA interference claim was not met because she failed to provide notice of an intention to take leave beyond a certain amount of pre-approved (non-FMLA) leave, the Sixth Circuit wrote that the defendant had "largely miss[ed] the point." *Id.* Because the plaintiff in *Wallace* had provided a doctor's note stating that she had a serious medical condition that required her to take leave from work and the employer, in response, provided the plaintiff with FMLA paperwork, the court concluded that a reasonable juror could conclude that the plaintiff had provided her employer with sufficient notice.

    2. *It Is Undisputed That Cooper Gave Sufficient Notice That She Needed FMLA Leave*

Examining the record in light of *Wallace*, the court concludes that it is undisputed that Cooper gave notice to the company that she would need FMLA leave beginning in early July 2012. It is further undisputed that Cooper articulated to her employer that her leave would be related to an FMLA-qualifying event. Indeed, Perfect Equipment admits that it had knowledge that Cooper was requesting leave and of a qualifying reason for the leave; the only dispute between the parties turns on the amount of leave requested by Cooper. Under the reasoning of *Wallace*, then, the notice requirement was met by Cooper's initial communication with Darnell and Hill regarding her surgery, regardless of the amount of leave that she requested at that time and its inconsistency with the duration of leave identified by Dr. Lien on Cooper's medical certification form. For these reasons, the court concludes no reasonable jury could conclude that Cooper failed to provide sufficient notice of her need for FMLA leave to her employer. At the very least, viewing the record in a light most favorable to the plaintiff, a genuine issue of fact exists as to whether or not Cooper gave sufficient notice to her employer regarding her leave. Accordingly, summary judgment is not appropriate for Perfect Equipment on this ground.

### B. Did Perfect Equipment Deny or Interfere with Cooper's Rights under the FMLA?

Perfect Equipment also argues that it is entitled to summary judgment because it is undisputed that Perfect Equipment did not deny Cooper any benefits to which she was entitled under the FMLA. The plaintiff's arguments are unclear as to her allegations of exactly *how* Perfect Equipment denied her benefits under the FMLA. In sum, however, she appears to argue that her employer interfered with her rights by terminating her during the period for which she had requested FMLA leave and by failing to inquire further into Cooper's request for leave at two points in time: (1) when it assessed Dr. Lien's medical certification form and designated only 7/23/12-08/21/12 as FMLA leave, despite Cooper's initial request for "three to four

13

months" of leave; and (2) after August 21, 2012, when she did not return to work for four days after her approved leave ended. Conversely, Perfect Equipment argues that Cooper's FMLA interference claim cannot be premised on her termination based on absences that occurred *following* her approved leave, because the notice given by Cooper (taking her conversations with HR and the medical certification in conjunction) was limited to the period ending on August 21, 2012. After careful review of relevant legal authorities and the record, the court concludes that a question of fact exists as to whether Perfect Equipment denied Cooper benefits under the FMLA by failing to inquire further as to the amount of leave required for Cooper's approved leave and to contact her before terminating her.

1. *Failure to Grant Leave after August 21, 2012 or Inquire Further as to Need for Leave*

In short, the question before the court is whether Perfect Equipment acted properly when it assessed and approved Cooper's July request for FMLA leave for only the duration of time identified on Cooper's medical certification form signed by Dr. Lien, without further inquiry into the discrepancy between the form and the plaintiff's initial oral request for leave.

As an initial matter, the federal regulations provide that an employer's decision to designate leave as FMLA-qualifying may be based on information received from the employee or the employee's spokesperson—for instance, her physician or spouse. 29 C.F.R. § 825.301(a). Such additional information includes medical certifications. *Id.* at §§ 825.302; 825.305. After notice has been given, the regulations also obligate employers to, "*in all cases*," inquire further of the employee to obtain necessary details of leave to be taken. *Id.* Even after medical certification is provided, an employer is obligated to advise an employee if the certification is considered incomplete or insufficient—*i.e*, if the information provided is vague, ambiguous, or non-responsive. *Id.* § 825.305(c). The regulations further provide that, if an employer considers

14

medical certification to be insufficient, the employer must advise the employee and state in writing what additional information is necessary to make the certification complete. *Id.* The employer must also provide the employee with seven calendar days to cure any deficiency. *Id.*

Here, it is undisputed that Cooper and the company discussed her surgery prior to her leave and that Cooper informed the company that she may require "three to four months" of medical leave. It appears to be further undisputed that Darnell and Cooper discussed, in the context of COBRA benefits, the date at which Cooper's 12 weeks of FMLA leave would expire that year, in the event that Cooper did, in fact, require continuous leave for a period of three to four months (and taking into account FMLA leave she had already used before July 2012). Additionally, it is undisputed that, subsequent to her conversation(s) with Cooper, Darnell, on behalf of the defendant, evaluated the medical certification form submitted by Cooper's physician, Dr. Lien. On the form, Dr. Lien identified an *estimated* period of incapacitation for Cooper's recovery, 7/23/12-8/21/12. Moreover, Dr. Lien indicated on the form that Cooper's recovery would include follow-up treatment appointments and, specifically put the company on notice that Cooper's work status would be addressed at her post-operative appointment scheduled for August 21, 2012.

The court concludes that, given these undisputed facts, it is implausible that the defendant was not on notice that Cooper may have required FMLA leave in excess of the time period estimated by Dr. Lien on the medical certification form. Despite being aware of the discrepancy between the plaintiff's request for leave and Dr. Lien's estimates, however, the defendant did not (1) request further information from Dr. Lien or Cooper regarding the dates of Cooper's recovery or medical certification thereof, in accordance with the regulations; (2) request that Dr. Lien or Cooper contact the company at the end of the estimated period of incapacitation identified by the

15

medical certification form; or (3) alert Cooper that not all of the "three to four months" discussed in their previous conversations would be considered FMLA-approved.[5] Instead, despite Dr. Lien's notes suggesting that the "estimate[d] dates of incapacitation" were, in fact, mere estimates, Perfect Equipment approved leave for Cooper using *only* the dates that Dr. Lien provided with respect to an *estimated* period of incapacitation.

The court recognizes that it is undisputed that Cooper received the Designation Notice, reviewed it, and did not raise any objection to the dates identified for FMLA leave. However, the defendant has not cited—and the court has been unable to find—any binding or persuasive authority supporting the defendant's argument that (1) a request for FMLA leave is limited in duration to dates supported by a medical certification form, and (2) the burden to clarify a discrepancy between a medical certification form and a plaintiff's request for leave rests solely with an employee.[6] In sum, because Perfect Equipment was aware of a patent and unexplained

---

[5] It goes without saying that, if the certification was considered incomplete or insufficient by the company, the regulations required that Cooper be given seven days to cure any defects. *See* 29 C.F.R. § 825.305(c).

[6] It appears that the Sixth Circuit has not addressed the issue of how district courts should consider requests for leave under the FMLA under circumstances where the amount of leave requested by the employee is inconsistent with the duration of incapacity estimated on a medical certification form. However, at least one other federal court of appeals has concluded that, with respect to estimated durations of incapacity identified in medical certification forms for purposes of FMLA leave, "[a]n estimate is just that." *Hansen v. Fincantieri Marine Group, LLC*, 763 F.3d 832, 840 (7th Cir. 2014). In *Hansen*, the Seventh Circuit reversed and remanded a district court's decision to grant summary judgment to an employer with respect to a former employee's FMLA interference and retaliation claims. The appellate court directly addressed the question of "whether an employer is allowed to deny intermittent FMLA leave when an eligible employee exceeds the estimated length or duration provided in his medical certification form." *Id.* at 835. In *Hansen*, the plaintiff's medical provider had certified to his employer that its employee had a chronic serious health condition that would cause episodic flare-ups, periodically preventing the employee from performing his job functions. "The certification set forth the date the condition began" and, in response to a question asking the doctor to "estimate the frequency of flare-ups and duration of related incapacity that the patient may have," the doctor responded, "4 times per 6 months . . . lasting 2-5 day(s) per episode." *Id.* at 842. After the defendant terminated the plaintiff for exceeding the absences as set forth in his medical certification form, the plaintiff

16

discrepancy between Cooper's requested dates for FMLA leave and her physician's estimate as to the duration of her incapacity, the court concludes that a reasonable jury could find that the company interfered with her rights by terminating her during her requested FMLA leave period and/or by failing to inquire further regarding the duration of her request for leave (instead, approving only the estimated dates identified by Dr. Lien). Accordingly, an issue of fact exists as to the fifth element of Cooper's *prima facie* case and the defendant is not entitled to summary judgment on this ground.

2. *Failure to Contact Cooper before Termination*

Cooper further argues that Perfect Equipment denied her benefits under the FMLA by failing to contact her and inquire if her absences were related to her FMLA-qualifying condition before terminating her. Specifically, she contends that, because it had notice of her FMLA-qualifying condition, Perfect Equipment should have inquired whether her absences were related to her previously-approved leave before terminating her. Conversely, Perfect Equipment argues that, because Cooper's approved FMLA leave ended on August 21, 2012, it was under no obligation to contact Cooper and inquire whether her absences subsequent to the expiration of her leave were FMLA-qualifying. After review of the record and persuasive authorities, the court concludes that a question of fact exists as to whether Perfect Equipment denied Cooper

---

filed suit under the FMLA. With respect to the defendant's argument that its employee's leave was "limited" to the duration estimated by his doctor, the Seventh Circuit wrote, "[t]he certification form requested an estimate, and Dr. Post gave an estimate." The court further noted that, if "certified frequency and duration were limits on the employee's entitlement to leave, there would be no need to request recertification when the employee's requested leave exceeded the frequency or duration stated in the certification; the employer could simply deny FMLA leave." *Id.* at 842-3 (citing 29 C.F.R. § 825.308(c) (regulation that authorizes an employer to request recertification where the "circumstances described by the previous certification have changed significantly (e.g., *the duration or frequency of the absence . . .* ).") (emphasis in original).

benefits to which she was entitled under the FMLA by failing to contact her before her termination.

The regulations interpreting the FMLA expressly state that, "[i]n any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee or the spokesperson to ascertain whether leave is potentially FMLA-qualifying." 29 C.F.R. § 301(a). Perfect Equipment argues that, because Cooper's FMLA was limited to the duration of time estimated by Dr. Lien, its obligation to inquire was not triggered here.

The court disagrees. As an initial matter, Perfect Equipment was on notice that (1) Cooper suffered from a serious medical condition, (2) Cooper estimated that she may require between three and four months of leave, and (3) her physician planned to re-evaluate her work status at her post-op appointment with him on August 21, 2012. On these grounds, the court concludes that Perfect Equipment was obligated to inquire further of Cooper as to whether her leave after August 21, 2012 was FMLA-qualifying. Other federal courts have similarly concluded that, "[w]hen an employee provides the employer with notice that she may be in need of FMLA leave . . . it then becomes the employer's duty to determine whether or not the employee actually requires FMLA leave if there is some doubt as to whether or not the request would qualify." *Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847, 853 (8th Cir. 2002); *see also Miller v. GB Sales & Serv., Inc.*, 275 F. Supp. 2d 823, 830 (E.D. Mich. 2003) (citing *Spangler*). "Moreover, where the employer has previous knowledge of the plaintiff-employee's health condition, there is a burden on the employer to inquire further whenever the employee calls in sick for medical reasons to determine if those reasons were FMLA-qualifying." *Miller*, 275 F. Supp. 2d at 829.

Here, given the undisputed facts in the record, including Perfect Equipment's admission that it had previously discussed with Cooper a period of leave in excess of the four weeks estimated by Dr. Lien, the court concludes that a reasonable juror could find that Perfect Equipment interfered with Cooper's FMLA rights by failing to contact her on August 22, 2012, or, at least, before her termination for excessive unexcused absences.

For these reasons, genuine questions of fact exist as to whether the plaintiff has established a *prima facie* case of FMLA interference. The court concludes that there are issues appropriate for trial as to whether or not the plaintiff can establish her *prima facie* case of FMLA interference by a preponderance of the evidence. Accordingly, the court need not proceed with the *McDonnell Douglas* analysis and will order that the defendant is not entitled to summary judgment.

**V.      The Plaintiff's Motion for Partial Summary Judgment**

The plaintiff has filed a Motion for Partial Summary Judgment as to Liability with regard to her FMLA interference claim. To win summary judgment, the plaintiff must establish that, when viewing the facts in a light most favorable to the defendant, no genuine issue of fact exists as to each essential element of her claim. For the reasons discussed with respect to the defendant's pending motion, there are genuine issues of fact with respect to the fifth element of Cooper's *prima facie* case for FMLA interference. Consequently, the plaintiff's motion will also be denied and her claim will proceed to trial.

**CONCLUSION**

For the reasons discussed herein, both the defendant's Motion for Summary Judgment and the plaintiff's Motion for Partial Summary Judgment will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge